# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 3:19-cr-0069 |
| ) | |
| **COURTNEY MATTHIAS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**APPEARANCES:**

**Delia L. Smith, United States Attorney**
**Adam Sleeper, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
    *For the United States of America,*

**Matthew A. Campbell, Federal Public Defender**
**Kia Danielle Sears, AFD**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
    *For Courtney Matthias.*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge**

    **BEFORE THE COURT** is the United *States' Amended Notice of Objection to the Magistrate Judge's Order Denying the Government's Motion for[ ]Reimbursement for Cost of Counsel and the Government's Motion Seeking Reconsideration of that Order*, which the Court construes as a motion for reconsideration.[1] (ECF No. 82.) For the reasons stated below, the

---

[1] The United States ("the Government") filed its original notice of objection on even date, (ECF No. 81), "incorrectly describ[ing] the defendant's release date." (ECF No. 82 at 1, n.1.) The Government states that the instant motion "rectifies that error and is intended to supersede the notice of objection filed at ECF No. 81." *Id.* Curiously, in its amended notice, the Government asserts that Matthias was released from prison on March 9, 2021, as indicated on the Bureau of Prisons Inmate Locator website, https://www.bop.gov/inmateloc/. The Court has confirmed that Matthias was incarcerated at that time and was released on December 27, 2021.

Court will overrule the Government's objections, deny the Government's motion, and affirm the Magistrate Judge's order docketed at ECF No. 78.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant Courtney Matthias ("Matthias") first appeared before the Magistrate Judge on October 2, 2019, on a criminal complaint charging him with two counts of knowingly transporting illegal aliens. At his initial appearance, Matthias represented that he could not afford his own attorney. Upon the United States' ("the Government") motion to detain, the Magistrate Judge appointed the Office of the Federal Public Defender to represent Matthias under the Criminal Justice Act ("CJA"). At the detention hearing two days later, the Magistrate Judge ordered Matthias released pending trial. The Magistrate Judge directed Matthias to provide his financial information through form CJA 23, which he filed on November 6, 2019. The Office of Probation additionally supplied information about Matthias' finances in the Pretrial Services and Presentence Investigation Reports.

On October 31, 2019, the Government filed an Information charging Matthias with two counts of knowing and reckless transportation of aliens within the United States. (ECF No. 8.) Matthias was arraigned on November 6, 2019.

On March 9, 2020, Matthias pled guilty to Count One of the Information. The Court scheduled the sentencing hearing for July 9, 2020. For a variety of reasons, among which the COVID-19 pandemic figured prominently, the hearing was continued several times.

On November 9, 2020, the Government filed a *Motion for an Order Requiring (1) the Defendant to Reimburse the Public for the Cost of Court-Appointed Counsel and (2) the Production of the Defendant's Financial Affidavit Post-Sentencing.* (ECF No. 58.) The Government argued that Mattias had approximately $300,000 equity in his home, in addition to regular monthly income—which the Government deemed sufficient financial assets to retain counsel. As such, the Government contended that Matthias should reimburse the cost of the court appointed counsel representing him. The Government additionally requested that the Court order the production of Matthias' CJA 23 form for the Government to review.

At the sentencing hearing held on January 7, 2021, the Government raised the issue of the pending motion for reimbursement of legal representation. The Court deferred consideration at that time. On January 14, 2021, the Magistrate Judge directed Matthias to

respond to the Government's motion by January 22, 2021. (ECF No. 66.) In his response, Matthias asserted that he does not own the home in which he lives and that he has no present or future interest in the home ascribed to him in Pre-Sentence Report ("PSR"). In support of his contention, he attached both a recent property tax bill and the Deed of Gift establishing the remainder interest in the property to his sisters. (ECF No. 69.)

The Court referred the matter to the Magistrate Judge, who denied the Government's motion for reimbursement on February 3, 2021, finding that "the information in the 2019 Pretrial Services Report, the PSR, and the CJA 23 are generally consistent . . . ." (ECF No. 74 at 4.) As such, the Magistrate Judge declined to order Matthias' confidential affidavit to be disclosed to counsel. The Magistrate Judge also found that "no party raised any questions about defendant's entitlement to appointed counsel" "[f]rom the time of the bail hearing [on October 4, 2019,] until the filing of the [Government's] motion [for reimbursement] on November 8, 2020 . . . ." *Id.* The Magistrate Judge thus held that "its original conclusion that Matthias is eligible for appointed counsel should not be disturbed." *Id.* at 3.

The Government filed a motion for reconsideration on February 17, 2021. (ECF No. 77.) In its motion, the Government argued that the Court's denial of the Government's request for reimbursement was "manifest injustice due to plain error." *Id.* at 4. Arguing that it is the Defendant's burden to prove inability to pay for representation, the Government asserted that similarly situated defendants have been found to be ineligible for court appointed counsel or have been required to make partial repayment for the cost of representation. The Magistrate Judge denied the Government's motion on April 5, 2021, finding that "the government does not meet any of the three bases for reconsideration." (ECF No. 78 at 2.)

The Government filed an objection to the Magistrate Judge's April 5, 2021 Order on April 19, 2021, seeking the Court's reconsideration. (ECF No. 82.) The Government argues that 1) "the Magistrate Judge made no express finding regarding the costs of counsel in this case;" 2) "to the extent that the Magistrate Judge implicitly made such findings, those findings are not supported by any record and are clearly erroneous . . . ;" and 3) "to the extent that the Magistrate Judge concluded that the defendant could pay some costs of counsel, but nevertheless concluded that repayment of costs of counsel was not warranted, the

Magistrate Judge's orders are contrary to law." *Id.* at 9. The Government "requests that the Court reconsider the Magistrate Judge's orders" and order Matthias to reimburse at least some of the costs of his representation, whether in a lump sum or in installments. *Id.*

## II. LEGAL STANDARD

Pursuant to the Federal Magistrate Act, a district court judge may reconsider any pretrial matter referred to a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Sandoval v. Midland Funding, LLC*, No. 18-09396, 2021 U.S. Dist. LEXIS 25793, *12 (D.N.J. Feb. 10, 2021) (explaining that a district court must have a "definite and firm conviction that a mistake has been committed" for a factual finding of the magistrate judge to be disturbed). Precedential Third Circuit case law consistently holds that the factual findings of the magistrate judge must be upheld "unless that determination 'either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'" *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1992)). *See also American Home Prod. v. Barr Labs., Inc.*, 834 F.2d 368, 371 (3d Cir. 1987).

"The Magistrate Judge's decisions are accorded wide discretion." *Benjamin v. Esso Std. Oil Co.*, No. 2009-0017, 2009 U.S. Dist. LEXIS 73213, at *7 (D.V.I. Aug. 18, 2009) (citing *NLRB v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992)). Consequently, a magistrate judge's legal findings will only be held contrary to law "if the Magistrate Judge misinterpreted or misapplied the applicable law." *United States v. Flanders*, No. 2010-29, 2010 U.S. Dist. LEXIS 96752, at *5 (D.V.I. Sept. 15, 2010); *Clarke v. Marriot Int'l, Inc.*, No. 1-08-cv-00086, 2010 U.S. Dist. LEXIS 40813, at *8 (D.V.I. Apr. 23, 2010). Moreover, because reconsideration "is an extraordinary remedy," it should only be granted sparingly. *Boldrini v. Wilson*, No. 3:CV-11-1771, 2013 U.S. Dist. LEXIS 22249, at *4-5 (M.D. Pa. Feb. 19, 2013).

Under the Local Rules of Civil Procedure, a motion to reconsider "shall be based on 1) an intervening change in controlling law; 2) the availability of new evidence, or; 3) the need

to correct clear error or prevent manifest injustice." LRCi 7.3. The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) ("Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration.") (citing *DeLong Corp. v. Raymond Int'l Inc.*, 622 F.2d 1135, 1139-40 (3d Cir. 1980)). "Such motions are not substitutes for appeals, and are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *Cabrita Point Dev., Inc. v. Evans*, 52 V.I. 968, 975 (D.V.I. 2009) (quoting *Bostic v. AT&T of the V.I.*, 312 F.Supp. 2d 731, 733 (D.V.I. 2004)).

### III. DISCUSSION

The Government filed the instant motion for reconsideration on April 19, 2021, fourteen (14) days after the Magistrate Judge issued the order denying the Government's previous motion on April 5, 2021. As such, the motion for reconsideration was timely filed.

The Court now considers whether the Government's arguments are properly before the Court. Pursuant to the Local Rules of Civil Procedure, a motion to reconsider must be based on an intervening change in law, newly available evidence, or a "need to correct clear error or prevent manifest injustice." LRCi 7.3.

*The Guide to Judiciary Policy* (the "*Guide*"), Vol. 7A, Appx. 2A provides in relevant part that "[t]he determination of eligibility for representation under the CJA is a judicial function to be performed by the court after making appropriate inquiries concerning the person's financial eligibility. *Guide*, IV.B.2.b. "Any doubts about a person's eligibility should be resolved in the person's favor; erroneous determinations of eligibility may be corrected at a later time." *Id.*, IV.B.2.e. Throughout, the *Guide* expressly incorporates discretion into the court's analysis as to whether reimbursement will be ordered of a defendant. Specifically, the *Guide* provides:

> If at any time after the appointment of counsel a judge finds that a person provided representation is financially able to obtain counsel or make partial payment for the representation, the judge *may* terminate the appointment of counsel or direct that any funds available to the defendant be paid as provided in 18 U.S.C. § 3006A(f).

*Id.*, IV.B.2.g. (emphasis added).

Likewise, the plain language of the United States Code permits the Court to terminate the appointment of counsel or require either full or partial payment of court appointed representation if the court finds the defendant is able to afford legal counsel, but it does not so require. Title 18, Section 3006A of the U.S. Code provides in relevant part:

> (a)(1) Representation shall be provided for any financially eligible person who
>     (A) Is charged with a felony . . .
>
> (b) . . . Unless the person waives representation by counsel, the United States magistrate judge or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him. . . .
>
> (c) If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it *may* terminate the appointment of counsel or authorize payment as provided in subsection (f), *as the interests of justice may dictate*.
> . . .
> (f) Further, [w]henever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it *may* authorize or direct that such funds be paid . . . as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(a)-(c), (f) (emphasis added).

In the instant motion for reconsideration, the Government presents three arguments regarding the Court's order:

> First, the Magistrate Judge made no express finding regarding the costs of counsel in this case—a relatively straightforward case—and whether the defendant's income would permit him to pay some or all of those costs. Second, to the extent that the Magistrate Judge implicitly made such findings, those findings are not supported by any record and are clearly erroneous—for the reasons stated above, the defendant's income would have permitted him to pay at least some of the costs of counsel. Third, for the reasons stated above, to the extent that the Magistrate Judge concluded that the defendant could pay some costs of counsel, but nevertheless concluded that repayment of costs of counsel was not warranted, the Magistrate Judge's orders are contrary to law.

(ECF No. 82 at 9.) The Government presents the Court with no "intervening change in controlling law" or "new evidence." *See* LRCi 7.3. Instead, the Government bases its motion

on the third prong of Rule 7.3: an alleged need to correct what the Government sees as "clearly erroneous" findings and orders that are "contrary to law." (ECF No. 82 at 9.) Nevertheless, the Court turns first to the Government's argument that the Magistrate Judge did not make "an express finding regarding the costs of counsel." *Id.*

In *United States v. Harris*, 707 F.2d 653, 662 (2d Cir. 1983), the Court of Appeals for the Second Circuit ("Second Circuit") noted that, although the court made no explicit finding, there was no indication in the record that the court had not considered the economic realities when denying count-appointed counsel to the defendant. Similarly, when denying court appointed counsel to the defendant in *United States v. Parker*, 439 F.3d 81 (2d Cir. 2006), the Second Circuit concluded that the court's review of the defendant's affidavit, prior income, and current salary "was sufficient to constitute an 'appropriate inquiry' into defendant's ability to pay," even without an express finding. *Id.* at 95. The Court finds that an express finding is not required and does not establish any of the three criteria for a motion for reconsideration. As such, the Court finds no merit in this argument as a basis to reconsider the Magistrate Judge's Order.

Next, the Court reviews the orders of the Magistrate Judge for clear error. The Government contends that any findings the Magistrate Judge may have made regarding Matthias' ability to pay for legal counsel "are not supported by any record and are clearly erroneous." (ECF No. 82 at 9.) The Court disagrees. The Court finds that the Magistrate Judge considered the financial information contained in the 2019 Pretrial Services Report, the Form CJA 23 Financial Affidavit completed by Matthias, the PSR, and the documentation Matthias provided to the Court establishing that the house where he resides belongs to his mother. Applying the parameters and discretionary analysis inherent in the relevant sections of both the U.S. Code and the *Guide*, the Magistrate Judge concluded that the original determination that Matthias was eligible for publicly funded representation "should not be disturbed." (ECF No. 74 at 3.); *see Haines*, 975 F.2d at 92 (finding that a magistrate judge's findings must be upheld unless the court finds they are "completely devoid of minimum

evidentiary support displaying some hue of credibility," or that they bear "no rational relationship to the supportive evidentiary data").

The Court finds that the Government's motion for reconsideration, docketed at ECF No. 82, puts forth no matters that were overlooked by the Magistrate Judge in reaching her April 5, 2021 decision, (ECF No. 78). *See Yurecko v. Port Auth. Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (Aug. 18, 2003, D.N.J.) ("[T]he motion may address only 'dispositive factual matters or controlling decisions of law' that were presented to, but not considered by, the court in the course of making the decision at issue.") (quoting *Resorts Int'l Inc. v. Greater Bay Hotel and Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992); *see also Bostic*, 312 F.Supp. 2d at 733 (explaining that motions for reconsideration are not to be used for disagreeing with the court's original decision, or rearguing issues previously addressed by the court). Therefore, because the Court does not have a "definite and firm conviction that a mistake has been committed," *Gypsum Co.*, 333 U.S. at 395, the Court does not find clear error in the Magistrate Judge's orders.

Finally, the Court reviews the Government's argument that the Magistrate Judge's orders are contrary to law. The Court looks to four cases cited by the Government as helpful in this analysis.

In its initial motion for an order requiring Matthias to reimburse the cost of counsel, (ECF No. 58), the Government cited two Circuit Court of Appeals cases in support of its assertion that a defendant "carries the burden of coming forward with evidence sufficient to rebut the government's showing that he may possess the ability to afford counsel." (ECF No. 58 at 2.) Unlike in the instant case, the government in *Harris* provided the court with significant new information about the defendant's finances that raised questions about the truthfulness of the defendant's financial disclosures. The government showed that the defendant may have underestimated his income by as much as 50%, failed to disclose other items of value, such as the Cadillac vehicle registered in his name, and did not have a credible explanation for the dissolution of his "substantial prior income."[2] *Harris*, 707 F.2d 653 at

---

[2] The Government references several fifteen- to forty-year-old cases in which defendants "under similar circumstances . . . have been found ineligible for appointment of counsel." (ECF Nos. 77 at 6, 81 at 7.) In one case cited by the Government, the magistrate judge recommended that the court terminate the appointment of

660-61. Referencing "material misrepresentations and misstatements" in the defendant's disclosures, the court in *Harris* concluded that the defendant had not met his burden and therefore terminated his publicly expensed appointment of counsel. *Id.* at 661.

In another case cited by the Government in its first motion, the Court of Appeals for the Seventh Circuit upheld the trial court's denial of appointed counsel in *United States v. Binder*, 794 F.2d 1195 (7th Cir. 1986) because "neither defendant made a sufficient showing of financial inability to provide these services for himself." *Id.* at 1200. Although Binder initially hired counsel with a retainer of $14,500, he moved for appointment of counsel mid-trial, reporting that he was unable to work since his indictment. At an evidentiary hearing on the matter, Binder acknowledged his net worth two years prior, in 1983, to have been over $600,000,[3] which included $90,000 in cash and $140,000 in gold and silver. The government countered with evidence that showed the actual valuation of his precious metals to be $210,000.[4] Finding Binder's responses to questions about his other holdings "evasive and disingenuous on what happened to cash assets of approximately $210,000," the court denied appointed counsel. *Id.* at 1201.

In both motions for reconsideration, (ECF Nos. 77, 82), the Government cited *United States v. Parker*, 439 F.3d 81 (2d Cir. 2006), as representing a defendant under similar financial circumstances to Matthias, whom the court found ineligible for appointment of counsel even though his net income over a period of 14 weeks in 2002 was $5,460.09.[5] However, unlike in the instant case, defendant Parker's request was for mid-case

---

counsel after the defendant was discovered to have earned $82,000 in 1980, in addition to failing to disclose other items of value. *Harris*, 707 F.2d 653, 661 (2d Cir. 1983). According to the Bureau of Labor Statistics ("BLS") CPI Inflation Calculator, $82,000 in December of 1980 has the same purchasing power as $264,910.36 in December 2021. As such, for Matthias' salary to have the same purchasing power in 2021 as defendant Harris' salary had in 1980, Matthias' salary would have to be approximately $264,910, instead of $74,880. Consequently, the Court finds that the defendant in *Harris* is not similarly situated to Matthias and concludes that *Harris* does not support the Government's position.

[3] According to the BLS CPI Inflation Calculator, when adjusted for inflation, a net worth of $600,000 in 1983 had the same purchasing power as a net worth of approximately $1,651,344 in 2021.

[4] According to the BLS CPI Inflation Calculator, $210,000 in 1983 had the same purchasing power as approximately $577,970 in precious metals in 2021.

[5] According to the BLS CPI Inflation Calculator, $5,460 in 2002 had the same purchasing power as approximately $8,415 net income in 2021.

appointment of counsel after he represented multiple times at his initial appearance that he had "fully retained" private counsel. *Id.* at 85. In response, the court held that his motion for mid-case appointment "would fail unless [the] defendant demonstrated 'sufficiently unusual and extenuating' circumstances to justify the appointment of counsel who had been fully retained." *Id.* at 86. Accordingly, the court directed the defendant to provide a copy of the legal retainer, an affidavit containing financial information regarding a number of topics, and a copy of his most recent tax returns—none of which the defendant supplied to support his request. Given the defendant's salary, his lack of supporting documentation, and the $71,973 his counsel had already been paid for his representation, the court denied Parker's motion. Finding that his attorney had already "received a reasonable fee for the work he had performed," the court concluded: "'even if the court had found that Parker was financially eligible for CJA appointment before [he received his last paycheck], the application still would have been denied.'" *Id.* at 88.

For the proposition that "it is the defendant's 'burden to prove he is unable to pay for the cost of representation,'" the Government cited a Third Circuit case in its most recent motion for reconsideration, *United States v. Konrad*, 730 F.3d 343, 346 (3d Cir. 2013). Significantly, the defendant in *Konrad*: 1) failed to disclose on his CJA Form 23 in 2010 either the joint bank account worth $34,893 or the $258,000 value of his home; 2) underestimated the $70,463 holding in his retirement accounts; and 3) under-reported his monthly income by more than 50%. *Id.*

Here, in contrast to the significant personal financial holdings in the aforementioned cases, the PSR indicates that Matthias earns approximately $74,880 annually. The Government asserts that Matthias has only a modest bank account valued at $3,000—$2,000 of which is the balance of his retirement account—and an alleged net monthly income of $4,373 per month from his salary and retirement income.[6] The Government notes that Matthias' sentencing memorandum indicates he pays an additional $1,150 per month in

---

[6] Although the Government previously alleged that he had a real estate interest in his home, Matthias provided sufficient documentation to establish that his residence is wholly owned by his mother, with whom he lives, and that he also has no future interest in the home. (ECF Nos. 69, 69-1, 69-2.)

child support not included in the PSR listing of expenses—nor factored into the net balance. (ECF No. 82 at 2-3 (citing ECF No. 50 at 4).) There is neither evidence nor allegation that Matthias has any other holdings or investments.[7] Yet the Government contends that Matthias "possesses sufficient assets to retain counsel," (ECF No. 58 at 2), because he earned an income while on pre-trial release and also received retirement payments each month. Yet these assets are not on par with those illustrated in the very case authority the Government provides for the Court as basis to order repayment for Matthias' representation.

The Court agrees with the unanimous Supreme Court decision in which Justice Black addressed the statutory financial requirement for *in forma pauperis* analysis under 28 U.S.C. § 1915:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges.

*Souder v. McGuire*, 516 F.2d 820, 823, n.4 (3d Cir. 1975) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339-40 (1948). Likewise, when addressing the Criminal Justice Act, Attorney General Robert F. Kennedy wrote to President John F. Kennedy, "the term 'indigency' (in 18 U.S.C. § 3006A(a)) is avoided because of its implication that only an accused who is destitute may need appointed counsel or services." H.R. Rep. No. 88-864 at 7, *reprinted* in 1964 U.S.C.C.A.N. 2990, 2995.

Upon review of the record, the Court finds that the Magistrate Judge was entitled, within her discretion, to find that ordering partial or full repayment of the costs of legal representation was not dictated by the interests of justice. *See Benjamin*, 2009 U.S. Dist. LEXIS 73213, at *7. Because the Court finds that the Magistrate Judge did not misinterpret or misapply the law, the Court concludes that there is neither manifest injustice nor manifest

---

[7] The Government conjectures that Matthias' retirement income may continue to have been paid during his incarceration. (ECF No. 82 at 8.)

error of law to prevent or correct. *See Martinez v. Francois*, No. 2013-0102, 2016 U.S. Dist. LEXIS 43422, at *6-7 (D.V.I. Mar. 31, 2016) ("Although invoking clear error and manifest injustice, Martinez does not identify any dispositive factual or legal matter presented to the Court that was overlooked. Rather he simply claims that the Court viewed the facts and law differently from him, and then attempts to reargue the facts and the law as he sees them. Such arguments are unavailing, however, because a motion for reconsideration is not to be used as a vehicle for registering disagreement with the court's initial decision [or] for rearguing matters already addressed by the court.") (internal quotation marks omitted).

## IV. CONCLUSION

The Court concludes that the Government's motion to reconsider is not based on either an intervening change in controlling law, the availability of new evidence, or a demonstrated need to correct clear error or prevent manifest injustice. Therefore, the Court will overrule the Government's objection, deny the motion to reconsider, and affirm the Magistrate Judge's April 5, 2021 Order.

An appropriate order follows.

**Date:** June 15, 2022                          */s/ Robert A. Molloy*
                                                 **ROBERT A. MOLLOY**
                                                 **Chief Judge**